UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY, a California public interest organization,<br><br>Plaintiff,<br><br>v.<br><br>MARK W. COWIN, In his Official Capacity As Director Of CALIFORNIA DEPARTMENT OF WATER RESOURCES; SALLY JEWELL, Secretary, U.S. Department of the Interior, in her official capacity; DAN ASHE, Director, U.S. Fish and Wildlife Service, in his official capacity; and UNITED STATES FISH AND WILDLIFE SERVICE<br><br>Defendants. | 1:15-cv-00884 LJO BAM<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS (Doc. 25) |

## I. INTRODUCTION

Plaintiff Center for Environmental Science, Accuracy & Reliability ("CESAR") seeks declaratory and injunctive relief against the construction and operation of an emergency drought salinity barrier ("Salinity Barrier") by the California Department of Water Resources ("DWR"). Compl. Doc. 1. Plaintiff also seeks to require the U.S. Fish and Wildlife Service ("FWS") to reinitiate consultation of the 2008 Biological Opinion on the Coordinated Operations of the Central Valley Project and State Water Project ("2008 BiOp"). *Id.* Plaintiff claims that installation and operation of the Salinity Barrier violates the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq. Id.*

## II. BACKGROUND OF THE CASE

The factual background of this case was discussed in detail in this Court's Order Denying

1

Plaintiff's Motion for a Temporary Restraining Order ("TRO Order"), Doc 22. Briefly, this case concerns the delta smelt, a species protected by the ESA that is found in the Sacramento-San Joaquin River Delta ("the Delta"). Compl. ¶ 22. The Delta is designated as critical habitat for the delta smelt. *Id.*

In 2014, DWR proposed to build three different rock barriers in the Delta in response to drought conditions. *Id.* at ¶ 23. The stated purpose of barriers was to deflect the tidal push of salt water into the Delta. *Id.* Plaintiff threatened to sue to prevent these barriers from being erected, and DWR withdrew its proposal to build them. *Id.* In 2015, DWR conducted a study of the potential environmental impacts of the three barriers. *Id.* at ¶ 24. At the same time, it applied for a Clean Water Act ("CWA") permit from the Army Corps of Engineers ("Army Corps"). *Id.*

On April 17, 2015, DWR withdrew its proposal to build three barriers and requested approval to build a single barrier. *Id.* at ¶ 25. On April 29, 2015, The Army Corps notified the public of the change. *Id.* DWR approved the project on May 4, 2015. *Id.* Pursuant to the ESA, the Army Corps conducted an emergency consultation with the FWS regarding the Salinity Barrier's potential to alter conditions discussed in the 2008 BiOp. *Id.* On May 5, 2015, the Army Corps issued the CWA permit. *Id.* Construction began on May 7, 2015. *Id.* At no time did DWR or any other party obtain an Incidental Take Permit or reinitiate formal consultation regarding the 2008 BiOp. *Id.* at ¶ 27. Plaintiff alleges that construction of the barrier increases the salinity of certain areas of the Delta, causing irreparable harm to the delta smelt. *Id.* at ¶ 29.

Plaintiff filed suit in the Superior Court of California for Sacramento County on May 6, 2015, Doc. 27-4, and immediately applied ex parte for a temporary restraining order to halt construction of the Salinity Barrier. Doc. 27-5. Hon. Christopher Krueger held a hearing and issued a minute order denying the request for a temporary restraining order on May 15, 2015. Doc. 27-9. CESAR filed an amended complaint in that case on June 22, 2015. Doc. 27-7.

On June 11, 2015, Plaintiff filed its complaint in this Court against Mark Cowin, director of DWR, Sally Jewell, Secretary of the U.S. Department of the Interior, FWS Director Dan Ashe, and FWS

...

itself. Plaintiff argues that construction and operation of the Salinity Barrier violates Section 9 of the ESA because it causes the unlawful "take" of delta smelt (Count I). Compl. ¶¶ 40-42. Plaintiff also argues that FWS violated ESA Section 7 by failing to initiate or reinitiate formal biological consultation on the 2008 BiOp (Counts II and IV). Compl. ¶¶ 45-47, 53-57.[1,2]

Plaintiff also moved for a temporary restraining order in this Court, requesting that Defendants be "temporarily restrained from continued construction and operation of the [Salinity Barrier] in the Bay-Delta . . ." Doc. 2. After reviewing the substantial amount of evidence placed in the record, the Court denied Plaintiff's request on the basis that it was moot (the barrier had already been constructed) and because Plaintiff failed to demonstrate a reasonably certain threat of imminent harm to the delta smelt. TRO Order at 13-15.

Now before the Court is Defendant Mark Cowin's Motion to Dismiss, Doc. 25. Defendant argues that the Court does not have jurisdiction over the case because Plaintiff did not comply with notice requirements of the ESA and, in the alternative, that the case should be dismissed under the *Colorado River* Abstention Doctrine. Mem. of P. & A. in Supp. of Mot. to Dismiss ("MTD"), Doc. 26. Plaintiff filed arguments in opposition on August 13, 2015. Opp'n of Pl. to Mot. to Dismiss ("Opposition"), Doc. 28. Defendant replied on August 20, 2015. "Reply", Doc. 34.[3] On August 26, 2015, Plaintiff sought leave to file an attached surreply. "Surreply", Doc. 35. The Court found it appropriate to rule on the motion without oral argument. *See* Doc. 32; L.R. 230(g).

### III. STANDARD OF DECISION

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-

---

[1] There is no "Count III" in the Complaint. Nevertheless, the Court retains Plaintiff's numbering for clarity.

[2] These claims are plead under the ESA and the APA. Where a plaintiff, as here, seeks to enforce a "substantive obligation imposed on the FWS to ensure that no action authorized by it is likely to jeopardize a threatened species," such an action arises under the ESA. *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001). This is because "there is a moment when Fish & Wildlife becomes the action agency—when it performs a § 7 analysis of its own decision on whether to re-initiate consultation." *See Sierra Club v. Salazar*, 961 F. Supp. 2d 1172, 1179 (W.D. Wash. 2013).

[3] Defendant had to refile on August 21, 2015 to correct mistakes associated with his original filing. *See* Doc. 33.

3

matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981). A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

Because the Court must consider documents outside the pleadings to address Defendant's motion, the Court will treat it as speaking motion. *See Safe Air*, 373 F.3d at 1039 (allowing the court to consider evidence outside the complaint without converting the motion into a summary judgment motion).

In a speaking motion, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. The Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## IV. ANALYSIS

Defendant argues that this Court does not have subject matter jurisdiction because Plaintiff did not provide a written sixty-day notice as required by the ESA. Reply at 2. First, Defendant argues that there is no evidence that Plaintiff provided notice to either the Secretary of the Interior or the Secretary

of Commerce. *Id.* Next, Defendant argues that letters do not properly identify the activity being challenged. *Id.* at 3-6. Plaintiff argues that the 2014 Letters were properly sent to the Director of the Fish and Wildlife Service and that they addressed the suite of projects that was eventually narrowed down to the single Salinity Barrier.[4] Surreply, 2.

The ESA provides that "no action may be commenced . . . prior to sixty days after written notice of the violation has been given to the Secretary,[5] and to any alleged violator of any such provision or regulation." 16 U.S.C.A. § 1540(g)(2)(A). "The notice requirement provides agencies with 'an opportunity to review their actions and take corrective measures if warranted.'" *Alliance for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998)). Accordingly, it is a "mandatory condition [ ] precedent to commencing suit" under the ESA. *Id.* (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989)). "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Sw. Ctr. for Biological Diversity*, 143 F.3d at 520. A district court may not disregard such a notice requirement at its discretion. *See Hallstrom*, 493 U.S. 20 at 31.

Plaintiff provides evidence that its notice letters were sent to the Director of FWS, but not the Secretary of the Interior. Plaintiff argues that the Secretary of the Interior has delegated much of its authority to regulate the ESA to FWS. Surreply at 3-4. On this basis, Plaintiff argues, the FWS Director was the proper official to notify. *Id.* at 4. In support of this argument, Plaintiff points to a DOI Department Manual[6] that states that a "representative being delegated that authority has the same

---

[4] The Court grants Plaintiff's request to file a surreply on the basis that Defendant only raised the issues of the scope of the notice letter and its addressees in its Reply. Mot. for Leave to File Surreply to Def.'s Reply Mem. Doc. 35 at 1-2 at 3-5.

[5] The term "Secretary" refers either to the Secretary of the Interior, the Secretary of Commerce, or the Secretary of Agriculture, depending what species is at issue. 16 U.S.C. § 1532(15). The delta smelt is classified as "threatened" by FWS, which is a Bureau of the Department of the Interior. 50 C.F.R. § 17.11. Thus, the Secretary of the Interior is the proper party to be notified.

[6] Plaintiff provides the citation as: Department of the Interior, Department Manual, Part 200, Chapter 1, § 1.8 ("DOI

5

responsibilities as the Secretary and must adhere to the same polices standards and programs." Surreply at 2. Plaintiff, however, does not provide any legal authority supporting its theory that the Secretary can or did delegate matters of involving legal representation to the FWS. Moreover, that same manual explains, "delegations of authority . . .do not include any authority to perform legal work related to the function delegated." DOI Manual § 1.6(C). Thus, there appears to be no valid basis for Plaintiff's belief that the FWS Director can be notified instead of the Secretary of the Interior.

As discussed above, the ESA requires strict compliance with Section 1540. In a case similar to this one, the Ninth Circuit upheld dismissal of ESA claims where the plaintiffs had notified various FWS and state officials, but not the Secretary of the Interior. *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988) ("Even if these letters provided the requisite notice of a violation, the letters were not sent to the correct person, the secretary, as required."). The strict adherence to notice requirements stems from a Supreme Court case that also involves a similar background. In *Hallstrom*, a district court allowed plaintiff dairy farmers' solid waste suit to proceed against a landfill operator, though they had failed to notify the proper agency head. 493 U.S. at 24.[7] The district court reasoned that a 60-day stay could operate as the functional equivalent of the notice period. *Id.* The Supreme Court rejected this interpretation, stating it "flatly contradicts the language of the statute." *Id* at 26. Moreover, "[t]he equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners 'failure to take the minimal steps necessary' to preserve their claims." *Id.* at 28 (quoting *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 466, (1975)).

This Court finds that Plaintiff's assertion that the FWS Director is the proper authority to be noticed under Section 1540 is "flatly contradicted by the language of the statute," especially when considered in light of the considerable case law requiring strict compliance with this subsection. *See Sw*.

---

Manual"). This document is available at: http://elips.doi.gov/ELIPS/DocView.aspx?id=735&dbid=0.

[7] While *Hallstrom* involved the Resource Conservation and Recovery Act, as opposed to the ESA, the Ninth Circuit treats their notice requirements similarly. *Save the Yaak Comm.*, 840 F.2d at 721("The only difference is that the ESA requires 'written notice.'").

*Ctr. for Biological Diversity*, 143 F.3d at 520. Moreover, the failure to notify the Secretary is the sort of "failure to take the minimal steps necessary" that does not weigh in favor of modifying statutory requirements. *Hallstrom*, 493 U.S. at 24. Therefore, this Court lacks jurisdiction over Plaintiff's case. Because failure to notify the correct parties is a clear impediment to jurisdiction, this Court need not evaluate Defendant's alternative arguments that the notice letters do not clearly identify the activity alleged to be in violation or that this case should be dismissed under the *Colorado River* abstention doctrine. Because amendment could not cure the deficiencies identified above, no leave to amend is granted.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendant's Motion to Dismiss, Doc. 25. No leave to amend is granted. The clerk of court is ordered to close the case.

IT IS SO ORDERED.

Dated:   **September 14, 2015**              **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE